UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                    Case No. 25-CR-20531

v.

                                        F. Kay Behm

ANTHONY RICHARD ALWARD        United States District Judge

      Defendant.

_____/

**OPINION AND ORDER DENYING MOTION TO SUPPRESS
AND REQUEST FOR A *FRANKS* HEARING (ECF No. 36) AND
<u>DENYING MOTION FOR SUBPOENAS (ECF No. 40)</u>**

## I.    PROCEDURAL HISTORY

Defendant filed a motion to suppress and for a *Franks* hearing on November 29, 2025.  (ECF No. 36).  The government filed a response and Defendant filed a reply.  (ECF Nos. 38, 39).  The court held oral argument on the motion on February 3, 2026.  For the reasons set forth below, the motion to suppress and for a *Franks* hearing is **DENIED**.  Accordingly, the motion for subpoenas for witness testimony at an evidentiary hearing (ECF No. 40) is also **DENIED**.

1

## II.    FACTUAL BACKGROUND

On September 19, 2024, law enforcement officers executed a federal search warrant at Defendant Anthony Alward's residence.  (ECF No. 1, Criminal Complaint, PageID.3).  Officers were investigating Alward for illegally possessing firearms and for possessing methamphetamine for sale and for use.  (ECF No. 38-1, Search Warrant Application and Affidavit, at Executive Summary and at ¶ 4).  An ATF agent obtained the search warrant on September 11, 2024.  *Id*. at p. 1.  The affidavit was based on information and photographs from two separate confidential informants (*id*. at ¶¶ 6, 15), as well as the observations of an undercover ATF agent (*id*. at ¶ 11).

As part of the investigation, ATF Agent Sutara received information from an informant identified in the affidavit as ATF-1.  *Id*. at ¶ 5.  Agent Sutara explained in the affidavit that ATF-1 was a reliable informant and provided information in exchange for payment.  *Id*. at ¶ 6.  In August of 2024, ATF-1 provided information that there was drug trafficking and drug possession at 1430 Brabyn Ave and that the homeowner, Anthony Alward, was in possession of firearms.  *Id*. at ¶ 5.  Specifically, ATF-1 stated he/she frequents the house and had seen Alward use and distribute narcotics and that Alward always has methamphetamine available to use and/or sell.  *Id*. at ¶ 7.  In

2

August 2024, ATF-1 also took and sent the agent a photograph of a firearm and explained that it was a gun that Alward kept in the residence. *Id*. at ¶ 8. Agent Sutara believed the firearm was a Hi-Point rifle. *Id*. at ¶ 9.

An undercover ATF agent also participated in the investigation. *Id*. at ¶ 11). Within 14 days prior to the affidavit, the undercover ATF agent went to the front porch of the home where he saw people in the living room using a pipe and saw other drug paraphernalia consistent with the use of methamphetamine. *Id*. The ATF agent, who had training and experience in the identification of narcotics, also smelled a distinct odor which he believed to be methamphetamine. *Id*. at ¶¶ 11–13. And while the undercover agent was at the house, a person inside the house yelled out to the agent, "You want dope?" *Id*. at ¶ 14.

Another informant, ATF-2, also participated in the investigation. *Id*. at ¶ 15. Agent Sutara explained that ATF-2 was reliable but did not provide information on whether ATF-2 had received payment for information or whether ATF-2 was trying to minimize possible criminal exposure. *Id*. Within 48 hours prior to the affidavit, ATF-2 went inside the residence and took a photo showing a firearm and a crack/meth pipe. *Id*. at ¶ 16. ATF-2 also stated that he/she had observed firearms, heroin and methamphetamine inside the

3

home. *Id*. Similarly, ATF-1 also stated that he/she had been in the house within the last 48 hours and observed Alward to be in possession of several ounces of suspected methamphetamine. *Id*. at ¶ 17. ATF-1 stated the suspected methamphetamine was packaged in one-ounce packages for sale. *Id*.

The affiant also provided information about Alward's criminal history (*Id*. at ¶ 10), which included several felony drug offenses, and about his experience regarding the common practices of people who sell drugs and illegally possess firearms. *Id*. at ¶¶ 18–22. With that, Agent Sutara noted that such people often maintain firearms for "extended periods of time" (*id*. at ¶ 21), and that they commonly use cellular phones to arrange drug deals with suppliers and customers (*id*. at ¶ 22).

Law enforcement executed the search warrant on September 19, 2024. (ECF No. 1, PageID.3). As officers began executing the warrant and announcing their presence, an officer assigned to cover the rear perimeter of the property observed a person throwing a bag out of a window. (ECF No. 30, PageID.124). Law enforcement seized the bag and later determined it contained 319.8 grams of actual methamphetamine. *Id*. at PageID.125. Inside the house, officers found firearms and other drugs. *Id*. at PageID.126.

One of the recovered firearms was a Hi-Point rifle that appeared consistent to the firearm depicted in ATF-1 and ATF-2's photographs.  (ECF No. 1, PageID.3).  Alward has been charged with possession with intent to distribute methamphetamine and with being a felon in possession of a firearm.  (ECF No. 35, Superseding Indictment, PageID.152).

## III.   ANALYSIS

### A.   The Affidavit Shows Probable Cause

The standard for probable cause, the Supreme Court has observed, is "incapable of precise definition or quantification into percentages."  *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir.), cert. denied, 145 S. Ct. 603, (2024) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Probable cause "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id*. (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (internal quotation marks and citation omitted)).  Or it requires "reasonable cause" or "reasonable grounds to believe" that contraband will be located on the property to be searched.  *Id*. (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n. 6 (1978) (quotation omitted)).  Importantly, "whatever nomenclature one uses to describe the concept,

probable cause, at its core, 'depends on the totality of the circumstances.'"

*Id*. (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Defendant argues that the affidavit fails to establish probable cause. First, he argues that the affidavit relies on conclusory informant tips. Second, the undercover agent never observed Alward commit a crime. Third, the affidavit contains boilerplate drug-trafficking language. Fourth, the affidavit contains no nexus between criminal activity and 1430 Brabyn Avenue. Fifth, the information in the affidavit was stale. Each argument will be addressed in turn.

Defendant argues that the affidavit relied on uncorroborated, conclusory informant tips. More specifically, Alward claims that the "tips fail to state who owns the guns and drugs and do not establish any quantities of drugs. (ECF No. 36, PageID.159). As the government points out, while it is true that there was no discussion about who "owned" the firearms, that is irrelevant because Section 922(g)(1) prohibits felons from possessing firearms. ATF-1 stated that Alward was the homeowner of the house and possessed multiple firearms. (ECF No. 38-1, ¶ 1). And for the quantity of drugs, ATF-1 stated that at the residence Alward possessed "several ounces of methamphetamine." *Id*. at ¶ 17.

6

The Sixth Circuit has upheld warrants with similar information in them:

> For example, we upheld the validity of a warrant based on an affidavit that stated the defendant was seen by the CI in possession of crack cocaine at the residence to be searched in the past 72 hours. *See United States v. Williams,* 224 F.3d 530, 531 (6th Cir. 2000). Sitting en banc, we upheld a warrant based on an affidavit that stated the defendant was seen by a CI in possession of cocaine at the residence to be searched in the past 72 hours. *See United States v. Allen,* 211 F.3d 970 (6th Cir. 2000) (en banc). We have also upheld a warrant whose affidavit was remarkably similar to the one in this case, which stated that the CI had been in the residence in the last five days and had seen the defendant storing and selling cocaine. *See United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993). Thus, although the warrant has scant information in it, the information it does contain is enough to establish a "fair probability" that evidence of a crime will be located on the premises of the proposed search. *See Jenkins,* 396 F.3d at 760 (internal quotation marks omitted).

*United States v. Moore*, 661 F.3d 309, 312–13 (6th Cir. 2011).  The *Moore* affidavit contained "mostly boilerplate language" concerning the police officer's experience in law enforcement and the traditional behavior of drug dealers, but did specify the apartment and items to be searched for and contained the following paragraph:

> On October, 25, 2008 Det. Sathongnhoth did speak with a reliable informant who has given information in the past in regards to narcotics trafficking resulting in two seizures of narcotics[. ]The reliable informant

7

> stated that he/she has been at the above described residence within the past five (5) days of October 25, 2008 and has seen the above described storing and selling cocaine at the above named address.

*Moore*, 661 F.3d at 311.  The court held that the affidavit, on its face, contained enough information for there to be a "substantial basis" on which the magistrate could conclude that probable cause existed to search the residence.  *Id.* at 312.

Here, the affidavit contains considerably more information to support probable cause despite any boilerplate, including statements from two confidential informants, who provided information that there was drug trafficking and drug possession occurring at 1430 Brabyn Avenue and that Defendant was possession of firearms.  Specifically, ATF-1 stated he/she frequents the house and had seen Alward use and distribute narcotics and that Alward always has methamphetamine available to use and/or sell.  (ECF No. 38-1, ¶ 7).  In August 2024, ATF-1 also took and sent the agent a photograph of a firearm and explained that it was a gun that Alward kept in the residence.  *Id*. at ¶ 8.  And within 48 hours of the affidavit, ATF-1 observed Defendant to be in possession of several ounces of suspected methamphetamine, packaged in one-ounce packages for sale.  *Id*. at ¶ 17.  Thus, Defendant's claims about the affidavit lacking information regarding the

8

quantity of drugs is contradicted by the affidavit.  Further, ATF-2, within 48 hours of the affidavit, went inside the residence and took a photo showing a firearm and a crack/meth pipe and also stated that he/she observed firearms, heroin and methamphetamine in the home.  *Id*. at ¶ 16.  The informants' observations about drug trafficking are corroborated by the undercover ATF's observations that within 14 days prior to the affidavit, he/she went to the front porch of the home where he saw people in the living room using a pipe and saw other drug paraphernalia consistent with the use of methamphetamine; smelled a distinct odor which he believed to be methamphetamine; and while at the house, a person inside the house yelled out to the agent, "You want dope?"  *Id*. at ¶¶ 11-14.  Thus, Defendant's claim about a lack of nexus has no merit.  Both informants stated that drug trafficking occurred at the residence, and the undercover agent corroborated this when he went to the residence.

Defendant also claims that the affidavit is defective because the undercover agent did not observe Alward committing a crime.  Defendant does not explain how this undermines probable cause.  A warrant's validity does not turn on whether it is supported by an "actual showing" of criminal activity at the targeted location; instead, the court asks "whether officers provided direct or circumstantial support to create 'more than mere

suspicion' that contraband will be found at the location in question."
*Sanders*, 106 F.4th at 462 (citations omitted).  As discussed in detail above, the affidavit contains more than sufficient support to show that contraband would be found at the location in question, including information from two confidential informants and an undercover agent.

Defendant's last claim – that the information was stale – is belied by the affidavit.  Defendant asserts that some of the information could be 40+ days old by September 11 because it mere provides a time frame of August 2024. Defendant claims there was no recent corroboration that appears in the information provided in the affidavit.  The Sixth Circuit has observed that "[w]here recent information corroborates otherwise stale information, probable cause may be found."  *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d, 1374 1381–82 (6th Cir. 1988) (citation omitted).  Within 48 hours prior to the affidavit, ATF-2 went inside the residence and took a photo showing a firearm and a crack/meth pipe.  (ECF 38-1, ¶ 16).  ATF-2 also stated that he/she had observed firearms, heroin and methamphetamine inside the home.  *Id*.  Similarly, ATF-1 also stated that he/she had been in the house within the last 48 hours and observed Alward to be in possession of several ounces of suspected

methamphetamine.  *Id*. at ¶ 17.  ATF-1 stated the suspected methamphetamine was packaged in one-ounce packages for sale.  *Id*.  And, within 14 days prior to the affidavit, the undercover ATF agent went to the front porch of the home where he saw people in the living room using a pipe and saw other drug paraphernalia consistent with the use of methamphetamine.  *Id*.  The ATF agent, who had training and experience in the identification of narcotics, also smelled a distinct odor which he believed to be methamphetamine.  *Id*. at ¶¶ 11–13.  And while the undercover agent was at the house, a person inside the house yelled out to the agent, "You want dope?"  *Id*. at ¶ 14.  Thus, even assuming the information from August was stale, the more recent events corroborated and "refreshed" any otherwise stale information.  *See Spikes*, 158 F.3d at 924.  The court finds that the information in the affidavit is not stale, and this does not provide any grounds to find a lack of probable cause.

Next, Defendant argues that the warrant is overbroad and lacks particularity.  More specifically, Defendant argues that Attachment B to the warrant authorized seizure of all electronic devices without establishing a nexus to drug trafficking.  But Attachment B only allowed the seizure of evidence of violations of 21 U.S.C. § 841 and 18 U.S.C. § 922(g)(1).  (ECF No.

11

38-1, p. 12).  Specifically, it allowed seizure of "cellphones and other electronic devices that Alward is believed to use for trafficking narcotics."  *Id*. This was based on the agent's common-sense observation that in his experience drug dealers "use cellular devices to arrange deals" and communicate with suppliers and customers.  *Id*. at ¶ 22.  Defendant does not offer any authority to the contrary.

Defendant argues the same with respect to the seizure authorizing all vehicles on the curtilage; that there was no nexus to drug trafficking.  He says that ultimately, the attachment gives the impression that occupancy goes back indefinitely.  While no evidence was recovered from the vehicles, the Sixth Circuit and other courts recognize that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises."  *United States v. Hudson*, 52 F.3d 326 (Table), 1995 WL 234680 at *7 (6th Cir. Apr. 20, 1995) (citing *Hudson*); *United States v. Pierce*, 574 F. Supp. 3d 449, 454 (E.D. Mich. 2021) (citing *Hudson*); *United States v. Griesbeck*, 2011 WL 528579, at *3 (E.D. Mich. Feb. 8, 2011) (citing *Hudson*).  Defendant offers no contrary authority.

Considering the totality of the circumstances, the court finds that the affidavit shows probable cause for the search.  While Defendant complains that there were no controlled buys, no surveillance, no trash pulls, and no observed transactions, the court must look at what the affidavit contains to evaluate probable cause, not what the affidavit does not contain.  *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (*United States v. Hines*, 885 F.3d919 (6th Cir. 2018) "requires us to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit.").  In *Hines*, the court emphasized the totality of the circumstances approach.  Using that approach here, the court finds that the affidavit shows probable cause for the search based on the statement of the two confidential informants and the observations of the undercover agent, which tie drug trafficking and the possession of firearms to Defendant and his residence.

B.      Defendant is Not Entitled to a *Franks* Hearing

There is "a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  But "a search warrant is invalid when the supporting affidavit contains a statement, *necessary to the finding of probable cause,* that is later

demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 438 U.S. at 155–56) (emphasis added). *Franks* also applies to cases where an affiant intentionally omitted information in an affidavit, which is critical to the probable cause determination. *Id.* A defendant may request an evidentiary *Franks* hearing if he "raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information." *United States v. Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) (citing *Franks*, 438 U.S. at 156). This requires making a "substantial preliminary showing" of knowing or reckless falsity. *Id.* at 182. If the defendant is able to show deliberate falsity or reckless disregard for the truth, those portions of the affidavit are set aside, and the remaining content is analyzed to determine if it supports probable cause. *Franks*, 438 U.S. at 171–72. Thus, the offending information must be essential to a probable cause finding. *Id.* Innocent or negligent mistakes are not enough. *Id.* at 171.

Under *Franks*, a defendant is entitled to a hearing on the veracity of a search warrant affidavit "if he makes specific allegations of deliberate falsehood or reckless disregard for the truth on the part of the affiant [ ] and

14

supports the[ ] allegations with an offer of proof." *United States v. Marlowe*, 993 F.2d 1548 (6th Cir. 1993). "The offer of proof" a defendant must proffer "must consist of affidavits or 'otherwise reliable statements' that support the contention that the affiant deliberately or recklessly falsified information in the affidavit." *Id*. at 1548 (quoting *Franks*, 438 U.S. at 171). "If the defendant does not produce such sworn or reliable statements, their absence must be satisfactorily explained." *Id*. In evaluating search warrant affidavits, courts begin with a "presumption of validity," and "[a] defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *Franks*, 438 U.S. at 171; *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (noting that a defendant must "make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement," to be entitled to a *Franks* hearing).

Alward claims that the affidavit "fails to disclose ATF-1 was paid or had charges pending." (ECF No. 36, PageID.163). However, the affidavit states "ATF-1 has cooperated with law enforcement in the past and is presently cooperating with law enforcement in exchange for monetary payment." (ECF No. 38-1, ¶ 6). And though the affidavit does not state whether ATF-2 was paid or cooperating in hopes of reduced criminal exposure, Alward has not

shown that the agent intended to mislead the court or that the oversight would have impacted probable cause.  As set forth in *Franks*, the offending information must be essential to a probable cause finding.  *Id*. at 171-72.  Innocent or negligent mistakes are not enough.  *Id*. at 171.  Defendant does not explain how whether information that ATF-2 was paid or was working off a case would have impacted probable cause.  In the court's view, it would not affect the probable cause analysis because ATF-2's information was corroborated by ATF-1's information and the photograph he/she sent to the agent.  Thus, the omission does not rise above a mere innocent or negligent mistake, which is insufficient for a *Franks* hearing.

At the hearing, Alward argued that ATF-1 has a history of drug abuse, a child abuse case, and a prior arrest, which had that been disclosed would have undermined his/her credibility.  However, the failure to inform the magistrate of the confidential informant's criminal activity does not satisfy the second requirement for a *Franks* hearing because that information would have no impact on the finding of probable cause.  *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).  Other courts addressing this issue have also found that a *Franks* hearing was not warranted, despite the fact that the affidavit failed to include information regarding the confidential informant's

16

criminal history, when the affidavit contained "other information suggesting that the information was credible." *United States v. Abbott*, 2019 WL 5865933, at *2 (W.D. Ky. Nov. 8, 2019) (quoting *United States v. Jones*, 533 F. App'x 562, 568–69 (6th Cir. 2013); and citing *United States v. Shaffer*, 238 F. Supp. 3d 913, 918 (E.D. Ky. 2017)).  Here, ATF-1's information is corroborated by the photo of the weapon he/she took, by the information and photo provided by ATF-2, and by the observations of the undercover ATF agent. Thus, other information in the affidavit suggests that ATF-1's information was credible and a *Franks* hearing is not warranted on this basis.

Defendant also asserts that the undercover officer when he approached the porch and smelled methamphetamine omitted that he never saw Defendant.  Defendant fails to explain how this omission, if it had been included, would have undermined probable cause.  Notably, the affidavit does describe that the four individuals the agent did see were "unidentified." Accordingly, it was clear from the affidavit that the agent did not see Defendant at this juncture.  Defendant also claims that the affidavit omits the undercover ATF agent's knowledge of what methamphetamine smells like. However, the search warrant affidavit stated that the undercover agent had been in law enforcement for 15 years, had been assigned to a narcotics

enforcement team, had specialized training in narcotics trafficking including methamphetamine, saw people inside Alward's home smoking a substance using a pipe, observed other paraphernalia indicative of methamphetamine use, and noted a "distinct odor believed to be methamphetamine."  (ECF No. 38-1, PageID.187).  Alward does not appear to argue that any of these facts are false, and he has not made a substantial showing that they are false.  Without such substantial showing, Alward is not entitled to a *Franks* hearing on this basis.

Next, Defendant argues that the affidavit "[a]ttributes drug/gun observations to 'inside the residence' without disclosing observation were by third parties, not Defendant" and this misled the magistrate into believing that Defendant personally possessed the guns and drugs.  The nexus, however, is to the location to be searched, not whether a particular person committed a crime.  That is, the affidavit must establish probable cause that the evidence will be found at the location to be searched.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (When reviewing an affidavit for a search warrant, a judge must make a "practical, common-sense decision" based on all the circumstances, including the veracity and basis of knowledge of individuals providing hearsay information, to determine if "there is a fair probability that contraband or

evidence of a crime will be found in a particular place."); *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013) (The judge must also determine that a nexus exists between the evidence sought and the place to be searched.). The affidavit was not misleading in this regard.

Defendant also argues that the affidavit should have mentioned that the officers did not do any controlled buys, surveillance, or trash pulls and that this "omission of failed investigative steps" is material under *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).  In *Carpenter*, the court examined whether the omission from an affidavit of additional investigative information in the police officers' possession that would have buttressed probable cause militated against the conclusion that they executed the warrant in good-faith reliance on its reasonableness.  *Id*. at 596.  The court said no because in order to be constitutionally problematic, the "material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause."  *Id*. at 596-597 (emphasis in original). *Carpenter* does not stand for the proposition that officers must include in a search warrant affidavit every step of an investigation that they possibly could have taken but did not.  As set forth above, the court is required to evaluate the totality of the circumstances as set forth in the affidavit to evaluate

19

probable cause, not what the affidavit does not contain.  *Christian*, 925 F.3d at 312; see also *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks or on what a critic might say should have been added.").

Defendant here has not made "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement," to be entitled to a *Franks* hearing.  *Bateman*, 945 F.3d at 1008.  Accordingly, the request for a *Franks* hearing is denied.

C.    The Good Faith Exception Applies

Even if the warrant were found to be invalid, the good faith exception to the exclusionary rule applies.  "[J]udicial suppression is inappropriate when an officer conducts a search in 'objectively reasonable reliance' on a warrant later deemed to be invalid."  *United States v. Neal,* 106 F.4th 568, 572 (6th Cir. 2024) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  However, the exclusion of evidence is not automatic; instead, the court asks whether exclusion will provide "appreciable deterrence").  *United States v. Herring*, 555 U.S. 135, 141-42 (2009).  This is because "[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. White,* 874 F.3d

20

490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921); *see also Neal*, 106

F.4th at 572 (observing that when the affidavit lacks probable cause, "the

authorizing judge—not the officer—is the blameworthy party").

The "good-faith inquiry is confined to the objectively ascertainable

question whether a reasonably well[-]trained officer would have known that

the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S.

at 922 n.23. "Some modicum of evidence, however slight[,] between the

criminal activity at issue and the place to be searched" will support an

officer's good-faith belief in the existence of probable cause. *United States v.*

*McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *White*, 874 F.3d at 496).

Thus, only when the affidavit is "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable" will the search fall

outside the good-faith exception and the evidence be suppressed. *Neal*, 106

F.4th at 572 (quoting *Leon*, 468 U.S. at 923).

A court's "good-faith inquiry is confined to the objectively ascertainable

question whether a reasonably well trained officer would have known that the

search was illegal" in light of "all of the circumstances." *Herring v. United*

*States*, 555 U.S. 135, 145 (2009). The affidavit in support of the warrant is not

"'so lacking in indicia of probable cause as to render official belief in its

21

existence entirely unreasonable.'" *United States v. Norey*, 31 F.4th 631, 636 (8th Cir. 2022) (quoting *Leon*, 468 U.S. at 923).  More specifically, the affidavit provided evidence of a connection between Defendant, the possession of guns and drug trafficking, and the Brabyn residence.  Within 48 hours prior to the affidavit, ATF-2 went inside the residence and took a photo showing a firearm and a crack/meth pipe.  (ECF 38-1, ¶ 16).  ATF-2 also stated that he/she had observed firearms, heroin and methamphetamine inside the home.  *Id*.  Similarly, ATF-1 also stated that he/she had been in the house within the last 48 hours before the warrant and observed Alward to be in possession of several ounces of suspected methamphetamine.  *Id*. at ¶ 17.  ATF-1 stated the suspected methamphetamine was packaged in one-ounce packages for sale.  *Id*.  And, within 14 days prior to the affidavit, the undercover ATF agent went to the front porch of the home where he saw people in the living room using a pipe and saw other drug paraphernalia consistent with the use of methamphetamine.  *Id*.  The ATF agent, who had training and experience in the identification of narcotics, also smelled a distinct odor which he believed to be methamphetamine.  *Id*. at ¶¶ 11–13.  And while the undercover agent was at the house, a person inside the house yelled out to the agent, "You want dope?"  *Id*. at ¶ 14.  Accordingly, this is not

a case where the affidavit is "completely devoid of any nexus between" the illegal activity and the place to be searched or the item to be seized, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004), nor does it "nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied," *Sanders*, 106 F.4th at 469 (citations omitted).  Thus, the good faith exception applies.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion for a *Franks* hearing is **DENIED**.  Accordingly, the motion for subpoenas for witness testimony at an evidentiary hearing (ECF No. 40) is also **DENIED**.

**SO ORDERED**.

Date: February 26, 2026                  s/F. Kay Behm
                                         F. Kay Behm
                                         United States District Judge

23